136 So.2d 257 (1962)
PARSLEY BROTHERS CONSTRUCTION COMPANY, Inc., a Florida Corporation; Lake Tarpon Investment Company, Inc., a Florida Corporation; Parsley and Stone, Inc., a Florida Corporation; and W.T. Parsley, Appellants,
v.
Joseph D. HUMPHREY, Appellee.
No. 2425.
District Court of Appeal of Florida. Second District.
January 9, 1962.
*258 Ben F. Overton of Baynard, McLeod & Overton, St. Petersburg, for appellants.
No appearance for appellee.
SHANNON, Chief Judge.
The appellee, plaintiff below, brought this suit in equity against the appellants seeking to obtain a deed of conveyance to certain real estate or, in the alternative, seeking a refund of money he had paid to the real estate broker.
The subject property was listed for sale with the appellant, Parsley and Stone, Inc., and the entire transaction was handled exclusively by W.A. Roberts, the selling broker in the instant case. The record herein indicates that W.T. Parsley and W.R. Parsley not only were officers of Parsley and Stone, Inc., but were also officers of Parsley Brothers Construction Company, Inc., one of the owners of the realty. Further, W.T. Parsley held a power of attorney from the individual owners. Additionally, the contract for sale was executed on behalf of the owners by W.T. Parsley and W.R. Parsley was designated in the contract as escrow agent.
The appellee, Humphrey, dealt exclusively with Roberts as agent of the appellant-owners. Humphrey went to the office of Roberts and entered into a contract to purchase Lot 77, Freshwater Estates, and delivered to Roberts the sum of $300.00 cash, leaving a $2700.00 balance. On the following day W.R. Parsley, the named escrow agent, received said funds from Roberts and the contract was executed on behalf of the owners. The contract used by Roberts was on a printed form furnished by the appellant listing broker, Parsley and Stone, Inc. Parsley and Stone, Inc., ordered a title insurance commitment, which was subsequently delivered to Roberts for delivery to Humphrey. Shortly thereafter Roberts sent the title insurance commitment to Humphrey with a letter instructing and directing Humphrey to send the balance of the purchase price to the writer, namely, Roberts. Humphrey sent Roberts a check for the balance of the purchase price. Roberts cashed the check and absconded with the funds. This suit was instituted following Humphrey's unsuccessful attempt to obtain a deed to the subject property.
In his final decree the chancellor states in part:
"This Court concludes from these findings inter alia that the agent Roberts was permitted to act on behalf of the owners over and above his otherwise limited authority and that under the circumstances, the Plaintiff had the right to assume that the agent Roberts was authorized to receive the balance of the purchase price and presumedly to deliver the deed. It is, therefore, the opinion of the Court that the Defendant owners, being in the more responsible position, are therefore called upon to hold that Plaintiff harmless with respect to the transaction in which the Plaintiff made full payment, with no abundance of caution perhaps, but not without reason under the circumstances heretofore set out. * * *"
In this appeal the appellants have raised three points, but for the purpose of our decision it is deemed necessary to discuss only two of them: 1) Does authority for a broker to receive an earnest money deposit clothe the broker with apparent authority to receive the balance of the purchase price? 2) Does authority for a broker to obtain and deliver to a purchaser evidence of title constitute apparent authority for the broker to receive the balance of the purchase price?
The general rule is, of course, that a real estate agent does not ordinarily have authority to receive payment on behalf of his principal. 8 Am.Jur., Brokers, Secs. 56, 59; 12 C.J.S. Brokers § 135; and 5 *259 Fla.Jur., Brokers, Sec. 18. It is to be noted, however, that the general rule is not without exception. There is no Florida law bearing directly on this precise point. For exceptions to this general rule see 30 A.L.R.2d 805, which contains a discussion of the various decisions wherein a real estate agent has been held to have such authority and where he has been held not to have such authority.
Under the general law of agency a principal may be bound by the acts of his agent which are in the latter's apparent authority. 1 Fla.Jur., Agency, Sec. 34. Apparent authority is that which the principal knowingly permits his agent to assume or which a principal by his actions or words holds the agent out as possessing. Stiles v. Gordon Land Company, Fla. 1950, 44 So.2d 417; Thomkin Corp. v. Miller, 1945, 156 Fla. 388, 24 So.2d 48; and Bogue Electric Mfg. Co. v. Coconut Grove Bank, C.A. 5, 1959, 269 F.2d 1.
Apparent authority is grounded on the estoppel doctrine which embraces generally the elements of, 1) a representation by the principal, 2) reliance on that representation by a third party, and 3) a change of position by the third party in reliance upon such representation. Fidelity & Casualty Co. of New York v. D.N. Morrison Construction Co., 1934, 116 Fla. 66, 156 So. 385. It should be borne in mind that Parsley and Stone, Inc., had express authority to sell this lot, including the right to receive payments. In fact, it is seen from the contract that Parsley and Stone, Inc., was handling the entire transaction for the sellers.
In the instant case the chancellor held that from the evidence, Roberts, the selling broker, was clothed with apparent authority as agent of the owners. In order for this court to disturb his finding we must determine that the evidence does not warrant such a holding. Lynch v. Coppola, Fla.App. 1961, 129 So.2d 183; Courington v. Courington, Fla.App. 1960, 120 So.2d 64; Brooks v. Adams, Fla.App. 1959, 115 So.2d 578. Included in the evidence received and weighed by the chancellor were a contract, cancelled checks, and the testimony of one Charles Sullivan. Sullivan testified that he had entered into a transaction identical to the one here but earlier in time. Checks were made payable to Roberts by Sullivan for $300.00 earnest money and the $2700.00 balance of purchase price. Roberts delivered the two checks to the escrow holder and they were accepted. It is readily discernible that Roberts had operated on a former occasion in the same manner as he had done in the present case. It also appears from the testimony of the appellee, Humphrey, that Sullivan brought him and Roberts together. This evidence was admitted by the chancellor over the objection of the appellants. It was assigned as error but was not argued in the appellants' brief and, hence, is deemed abandoned. Rule 3.7, subd. i, Florida Appellate Rules, 31 F.S.A.; Simon v. Simon, Fla.App. 1960, 123 So.2d 41; and Ramsey v. Aronson, Fla.App. 1957, 99 So.2d 643. The record bears out the conclusion that the agent, Roberts, was permitted to act on behalf of the owners over and above his otherwise limited authority. When one of two innocent persons must suffer for the wrongful act of a third person, the loss should fall upon the one who by reasonable diligence or care could have protected himself. Niccolls v. Jennings, Fla. 1957, 92 So.2d 829; United Service Corp. v. Vi-An Construction Corp., Fla. 1955, 77 So.2d 800; and Reasoner v. Fisikelli, 1934, 114 Fla. 102, 153 So. 98.
We have examined all the questions raised by the Appellant in light of the record before us and find no error. The final decree, therefore, is affirmed.
Affirmed.
KANNER and SMITH, JJ., concur.